UNITED COMPANIES LENDING
CORPORATION, Appellant,

v.

Emmett CALVERT, Secretary of Revenue,
County of Johnson; Johnson County
Health Department; Johnson County
Library; Agriculture Conservation Ken-
tucky Forestry Service; State of Ken-
tucky; Johnson County Board of Edu-
cation; Paintsville Independent School
System; Arthur Castle; Helen Castle;
Citizens National Bank; and Quentin
Castle, Appellees.

No. 94–CA–975–MR.

Court of Appeals of Kentucky.

April 28, 1995.

Ordered Published June 9, 1995.

Richard M. Wehrle, J. Thomas Rawlings,
Lexington, for appellant.

S.H. Johnson, William A. Johnson, Paints-
ville, for Emmett Calvert, Secretary of Reve-
nue, County of Johnson; Johnson County
Health Dept.; Johnson County Library;
Agriculture Conservation Kentucky Forestry
Service; State of Kentucky; Johnson County
Bd. of Educ.; and Paintsville Independent
School System.

Michael S. Endicott, Paintsville, for Arthur
Castle and Helen Castle.

William C. Mullins, Paintsville, for Citizens
Nat. Bank.

Quentin Castle, Paintsville, pro se.

Before DYCHE, GUDGEL, and
WILHOIT, JJ.

*OPINION*

GUDGEL, Judge:

This is an appeal from a summary judg-
ment granted by the Johnson Circuit Court
in an action involving certain tax liens on real
property. Appellant mortgagee United
Companies Lending Corporation (United)
contends that the trial court erred by finding
that United acquired proper notice as to the
existence of certificates of tax delinquency on
the real property. Further, United contends
that the court erred by finding that due to
the existence of certificates of tax delinquen-
cy concerning unpaid taxes due on a previous
owner's remaining real property, a blanket
lien existed in favor of taxing authorities
against the mortgaged property of appellees
Arthur and Helen Castle (the Castles). For
the reasons stated hereafter, we reverse and
remand.

Appellee Quentin Castle (Quentin) failed to
pay ad valorem taxes due on certain tracts of
real property which he owned in Johnson
County. Hence, in February 1991 a com-
plaint was filed against Quentin and his
mortgagee, Citizens National Bank, by vari-
ous Johnson County governmental entities
(hereinafter jointly referred to as Johnson
County). The complaint alleged that "[p]ur-
suant to the provisions of KRS 134.450 the
delinquent tax claims which became certifi-
cates of delinquency when sold were sold by

the sheriff at public auction and purchased for" Johnson County, and that those "[d]elinquent tax forms evidenced by Exhibit B ... constitute a valid first and superior lien against the property...."

In August 1992 the trial court rendered a default judgment and order of sale in favor of Johnson County. However, Johnson County apparently agreed to postpone the judicial sale so that Quentin could attempt to sell his property and pay the amount of the delinquent taxes owed. Quentin subsequently sold one portion of the property, consisting of several subdivision lots collectively known as the "June Bug property," to the Castles for $42,500. The Castles financed the purchase by obtaining a $37,000 first mortgage loan on the property from United. It is uncontroverted that all due and unpaid taxes relating to the June Bug property were paid in full at the December 1992 closing of the transaction and that the liens regarding same were released, but that the taxes due in relation to Quentin's other properties were not paid and the liens as to those properties were not released.

Several months later, the trial court granted Johnson County's motion to file an amended complaint which added United and the Castles as defendants to the original action. The amended complaint alleged that the June Bug property was subject to Johnson County's unpaid certificates of tax delinquency regarding Quentin's remaining properties, and that these unpaid taxes should be paid either by the Castles or from the proceeds of a sale of the June Bug property. In an answer to the amended complaint, United contended that all outstanding taxes and liens against the June Bug property had been satisfied prior to that property's transfer. Moreover, United asserted that Johnson County's claims were barred because certain required documents had not been filed with the Johnson County Clerk, and hence, that United did not acquire the requisite "constructive and/or actual notice of the matters set forth in" the amended complaint at the time of the 1992 closing.

Johnson County thereafter sought a summary judgment and the sale of the June Bug property. United then made its own motion for summary judgment, asserting that Johnson County had failed to satisfy its statutory obligation to properly file certificates of tax delinquency, and that it therefore was estopped to bring this action.

In November 1993 the trial court granted a summary judgment in favor of Johnson County and ordered United to satisfy all of Quentin's unpaid taxes in the amount of $7,897.99, for which the county "had filed liens" in the county clerk's office pursuant to KRS 134.420. The court reasoned that the Johnson County Clerk's office alphabetically lists property liens by both the owners' and the lienholders' names, and that "the printout sheet on record for Quentin on April 15, 1992, lists liens against all of Quentin's property in Johnson County."[1] The court further reasoned that United's title search had put it on notice of all tax liens against property owned by Quentin, that United should be presumed to have known that KRS 134.420 provides "a 'blanket lien' against all of a debtor's property for tax liability upon one parcel of property," and that "[i]n order to release the tax lien on the June Bug property, the entire amount of Quentin's tax liability within Johnson County must first be satisfied." Finally, the court concluded that the Castles were entitled to recover from United the damages they sustained as a result of the latter's defective title search.

Subsequently, in response to United's motion, the trial court also granted United a judgment against Quentin for the amount of his unpaid taxes. This appeal followed.

United persuasively argues on appeal that when viewed in the light most favorable to United and the Castles, the record creates multiple material issues of fact which precluded the trial court from granting a summary judgment in favor of Johnson County. See Steelvest, Inc. v. Scansteel Service Center, Inc., Ky., 807 S.W.2d 476 (1991). For instance, the record fails to show whether the sheriff initially attempted to satisfy the delin-

---

1. The printout sheets contained in the record list various properties which were owned by Quentin and as to which Johnson County purchased tax claims, but the properties are described at most as "Tom's Creek," "Sitka Subdivision," or "Turner Branch."

quent tax claims by selling Quentin's personal property, or whether the sheriff properly advertised those tax claims for sale. KRS 134.430 and KRS 134.440. Moreover, despite the requirements of KRS 134.420 and KRS 134.450, the record fails to specifically show whether the June Bug property was owned by Quentin on the date when the tax claims were offered for sale, or to show that the sheriff and the county clerk took steps to properly file and retain the certificates of tax delinquency subsequent to the sale of the delinquent tax claims. Further, assuming for purposes of the summary judgment motion that the Castles were bona fide purchasers of the June Bug property as to whom the notice requirements of KRS 382.440 applied, the record fails to show that a lis pendens notice specifically describing the property affected by the action was filed in the Johnson County Clerk's office as required by that statute.[2]

However, we need not reach the issue of whether there were material issues of fact which precluded the court from granting Johnson County a summary judgment. Instead, we conclude that the trial court clearly erred as a matter of law by finding that a blanket lien existed against the June Bug property concerning all unpaid taxes which Quentin owed regarding certificates of tax delinquency covering the other tracts of real estate he owned.

Johnson County asserted below that by providing a taxing authority a first lien "on any real property owned by a delinquent taxpayer at the date when the sheriff offers the tax claims for sale as provided in KRS 134.430 and 134.440," KRS 134.420 thereby provides all taxing authorities with blanket liens against all real estate owned by a particular delinquent taxpayer. We disagree. As this court has previously held, the quoted language instead means only that:

> [W]hen there is a tax lien on assessed real property which is subject to sale by the sheriff under the provisions of the applicable statutes, *so much of the lien that re-*

mains after the sale of personalty as provided in KRS 134.430 *shall constitute a first lien against the assessed real estate. In no event can this be construed to give the taxing authority a lien against real estate for taxes assessed against property other than the particular real estate.* (Emphasis added.)

*Midland–Guardian Co. v. McElroy,* Ky. App., 563 S.W.2d 752, 754 (1978).

Similarly, we are not persuaded by Johnson County's assertion that the court's decision was compelled by KRS 134.470, which states that "[a]n uncollectible tax bill or a certificate of delinquency shall embrace *the entire tax claim,* including the lien provided in subsection (1) of KRS 134.420, and shall continue to be a personal obligation of the delinquent taxpayer." (Emphasis added.) In the first place nothing in the definition of "tax claim" suggests that the phrase "entire tax claim" is intended to include amounts assessed against multiple pieces of real estate rather than those due on a single tax bill assessed against a single piece of property. KRS 134.010(6). Moreover, this court has previously held that where KRS 134.470 proceedings

> involve a lien foreclosure, and taxes on multiple parcels are sought to be collected from the sale of one parcel of real property, the property to be sold must be ripe for sale by having delinquent taxes which are over three years old, and *the property to be sold must still belong to the delinquent taxpayer. It would simply be unthinkable to allow satisfaction of several certificates of delinquency and unpaid tax bills from the sale of a parcel of real estate which the delinquent taxpayer had sold to someone else.* Again, however, the phrase does not mean that a lien for enforcing the tax payment on the assessed parcel is lost when that property is sold. (Emphasis added.)

*Commonwealth v. Anderson,* Ky.App., 694 S.W.2d 465, 468 (1985).

---

**2.** Indeed, the attorney for Johnson County appears to have admitted to not having complied with KRS 382.440 in his letter to United's counsel, wherein he stated that "it is not the custom

nor the practice in Eastern Kentucky for the officials to file Lis Pendens notices on delinquent taxes levied on local properties."

Here, it is uncontroverted that all the tax liens on the June Bug property were paid and satisfied on the date that property was sold to the Castles. Because any tax liens relating to Quentin's other real estate did not need to be paid or satisfied as part of the June Bug transaction, it follows as a matter of law that the trial court erred both by ordering United to pay and satisfy such liens, and by granting a summary judgment in favor of Johnson County. *See Anderson, supra; Midland–Guardian, supra.*

Given our conclusions to this point in the opinion, we need not address United's remaining contentions.

The court's judgment is reversed and remanded with directions to enter an amended judgment consistent with the views expressed in this opinion.

All concur.